UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BECKY THIBODEAUX                                    CIVIL ACTION

VERSUS                                              NO:  04-3297

BAKER HUGHES INCORPORATED,                          SECTION: "S" (5)
*ET AL.*


ORDER AND REASONS

IT IS ORDERED that the Motion for Summary Judgment of defendants Baker Hughes

Incorporated and Baker Hughes Oilfield Operations, Inc. (Document 29) is hereby GRANTED.

The Motion for Summary Judgment of defendant Continental Casualty Company (Document 26)

is hereby GRANTED.  The case is dismissed.

A.      Background.

        Plaintiff Becky Thibodeaux began working for Baker Hughes Oilfield Operations in

February 2003.  Thibodeaux alleges that during her employment with Baker Hughes,[1] she was

---

[1]      It is uncontested that defendant Baker Hughes Incorporated did not employ
Thibodeaux, and is therefore entitled to summary judgment.  *See* 42 U.S.C. § 2000e-2.  All
textual references to "Baker Hughes" denote only Baker Hughes Oilfield Operations.

1

subjected to sexual harassment from Baker Hughes' male employees.  Thibodeaux alleges that

much of this harassment was perpetrated by Vinnie Leco, a Baker Hughes quality control

manager.  Although Thibodeaux became a personal friend to Leco when she began her

employment,[2] she alleges that during 2003 his behavior became harassing.  Thibodeaux alleges

that Leco constantly telephoned her residence demanding to know her whereabouts, asked her if

she was dating, inappropriately discussed his marital status, and appeared uninvited at a

restaurant where she was dining.  Thibodeaux alleges that in November 2003 during a work-

related outing, Leco drove her through his boyhood neighborhood and showed her where he used

to live with his wife.  According to Thibodeaux, on December 20, 2003, Leco gave her a note in

which he promised to cease these activities and confine his communications with her to those "at

work and about work."  Thibodeaux alleges that Leco did not cease his harassing behavior,

telephoning her at home on several occasions and driving past her home on January 27, 2004.

Additionally, Thibodeaux claims these instances of harassment:

● In January 2004, Pat Sauls, a Baker Hughes field supervisor, asked her to visit

him one weekend if she became lonely or bored.[3]

● In January 2004, Mike Hanks, a Baker Hughes operations coordinator, telephoned

Thibodeaux at home.  Hanks was staying in a hotel, and Thibodeaux believed he was

intoxicated.  Hanks asked Thibodeaux about a work-related letter.  This call left her a

---

[2] Thibodeaux testified at her deposition that she invited Leco to her residence "a lot" during their friendship.  Additionally, Leco helped Thibodeaux with numerous household tasks, including fixing her washing machine, fixing a broken lock on her door, cutting her grass, and working on her car.  Depo. Thibodeaux at 109-110.

[3] *Id.* at 103-04.

"little alarmed, single mother like myself."[4]

●     George Cox, a fellow Baker Hughes employee, telephoned Thibodeaux at her residence two or three times over the course of two days, telling her not to call him back at his own home because his girlfriend might answer the telephone.  Cox later asked whether Thibodeaux was going to report him to the Human Resources Department. Thibodeaux concluded that "obviously he wanted to hook up with me in some way that he didn't want his girlfriend to find out about."[5]

●     Glenn Prestenbach, a Baker Hughes operations coordinator, used vulgar language at the workplace on a daily basis.  On one occasion, he "shook his finger near my face" while reprimanding her about a workplace error.[6]

●     Carl LeBeouf, the Baker Hughes inventory coordinator, required Thibodeaux to inform him when she went to the restroom, and instructed her to bring a telephone with her when she did so.  This was "an ongoing joke."[7]

●     A fellow employee overheard Prestenbach and Ron Runyon threatening that they were "going to get that bitch [Thibodeaux]" after she had complained about Prestenbach's behavior.  Thereafter her computer was sabotaged, and some of her work files were

---

[4]     *Id.* at 85.

[5]     *Id.* at 91-92.  When asked what she meant by this statement, Thibodeaux replied "Maybe you need to ask him what he was up to."  *Id.* at 92.  Thibodeaux admitted that Cox never asked her on a date or indicated a desire to pursue a sexual relationship with her.  *Id.*

[6]     *Id.* at 97.

[7]     *Id.* at 99.

deleted or destroyed.[8]

Thibodeaux did not contemporaneously report these instances of alleged harassment to the Baker Hughes Human Resources Department.[9]  On February 25, 1994, Thibodeaux wrote to Johnny Schwegmann, a Baker Hughes supervisor, notifying him that she believed she was employed in a "hostile work environment" that was "toxic."  On that day Thibodeaux went on short-term disability.

Baker Hughes' disability policy was underwritten by defendant Continental Insurance Company, which terminated Thibodeaux's disability benefits on April 30, 2004.  On July 8, 2004, without ever attempting to return to work, Thibodeaux was fired.  The correspondence informing her of her termination indicated that she was being fired because she did not return to work after the cessation of her disability benefits.[10]

Thibodeaux alleges three claims against Baker Hughes:  sexual harassment under Title VII, retaliation under Title VII, and intentional infliction of emotional distress under Louisiana law.  Additionally, she alleges that Continental[11] improperly terminated her disability benefits.

---

[8]    *Id.* at 105.

[9]    Thibodeaux testified that on one prior occasion, an elderly coworker made a sexist remark to her.  She complained to Christine Montet in the Baker Hughes Human Resources Department, and at Montet's behest the coworker apologized to Thibodeaux and began to behave appropriately.  However, Thibodeaux was upset that Montet remarked that Thibodeaux "had to know that he [the coworker] didn't mean it."  *Id.* at 77.  Based on this one remark, and despite the satisfactory resolution of her complaint, Thibodeaux concluded that she was not "safe or secure" in reporting incidents of harassment to Montet.  *Id.*

[10]    Thibodeaux got married on July 7, 2004, and her termination letter was sent on the next day.  Thibodeaux received the letter after she returned from her honeymoon.  *Id.* at 69.

[11]    ERISA authorizes Thibodeaux to sue to recover benefits due under a plan, to enforce rights under the terms of a plan, or to clarify rights to future benefits under a plan.  29 U.S.C. § 1132(a)(1)(B).  However, under ERISA the employee benefit plan itself "may sue or be

Defendants have moved for summary judgment on each of these claims.

**B.     Analysis.**

**1.     Summary judgment standards.**

Rule 56 provides that summary judgment "shall be rendered forthwith" if the pleadings and evidence demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The Supreme Court has held that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to prevent summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.  The inferences the court may draw from the underlying facts in the affidavits, depositions, and exhibits "must be viewed in the light most favorable to the party opposing the motion." *McAvey v. Lee*, 260 F.3d 359, 363 (5th Cir. 2001) (*quoting United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S. Ct. 993, 8 L.Ed.2d 176 (1962)).

**2.     Baker Hughes' Motion for Summary Judgment (Document 29).**

**a.     Sexual harassment.**

**i.     Title VII.**

An employee making a Title VII sexual harassment claim alleging a hostile work environment must establish that:

(1) The employee belongs to a protected group,

---

sued . . . as an entity," and any money judgment is enforceable only against the plan itself. *Id.* at § 1132(d)(1)-(2).  Thibodeaux has not named the Baker Hughes ERISA plan as a defendant, and admits that Continental is not "directly liable" for a money judgment.  The court addresses the motion as though the claim had been brought against the plan.

(2) The employee was subject to unwelcome sexual harassment,

(3) The harassment complained of was based on sex, [and]

(4) The harassment affected a "term, condition, or privilege of employment," i.e., the sexual harassment must be sufficiently severe or pervasive to as to alter the conditions of employment and create an abusive working environment.

*Watts v. Kroger Co.,* 170 F.3d 505, 509 (5th Cir. 1999); *Green v. Administrators of the Tulane Educational Fund*, 284 F.3d 642, 655 (5th Cir. 2002).  Additionally, if the alleged harasser is a co-worker without supervisory responsibilities, the plaintiff must demonstrate "*Respondeat superior, i.e.*, that the employer knew or should have known of the harassment and failed to take prompt remedial action."  *Watts*, 170 F.3d at 509 n. 3.

In determining what constitutes "severe and pervasive" harassment, the Supreme Court has directed:

Workplace conduct is not measured in isolation; instead, "whether an environment is sufficiently hostile or abusive" must be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Hence, "[a] recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in 'the terms and conditions of employment.'"

*Clark County School District v. Breeden*, 532 U.S. 268, 270-71, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (citations omitted).  Actionable harassment must be "so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the work place."  *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 326 (5th Cir. 2004).  It is not enough that an employee merely perceives harassment; "[A] sexually objectionable environment must be both subjectively and objectively offensive."  *Green*, 284 F.3d at 655.

In several decisions involving allegations of sexual harassment, the Fifth Circuit has affirmed grants of judgment as a matter of law to defendants based on facts more egregious than

6

those alleged by Thibodeaux.  In *Shepherd v. Comptroller of Public Accounts,* 168 F.3d 871 (5th Cir.), *cert. denied*, 528 U.S. 963, 120 S.Ct. 395, 145 L.Ed.2d 308 (1999), one of plaintiff's coworkers told her that her elbows were the same color as her nipples, commented on the size of her thighs while simulating looking under her desk, tried to look down her clothing on several occasions, touched her arm on several occasions while running his hands down to her wrist, and on two occasions patted his lap while remarking "here's your seat."  While the coworker's behavior was "boorish and offensive," the court held that it did not constitute actionable sexual harassment.  Similarly, in *Hockman* the Fifth Circuit affirmed a grant of summary judgment to defendant where defendant's employee told plaintiff that another employee "had a nice behind and body," brushed against plaintiff's breasts and rear, slapped her rear, tried to kiss her once, asked her to come to work early several times so they could be alone together, and watched her from the door to a restroom while she washed her hands.  *Hockman*, 407 F.3d at 328-39.

The court finds that plaintiff has failed to raise a genuine issue of disputed material fact regarding whether she was subjected to "severe and pervasive" sexual harassment, and Baker Hughes is entitled to summary judgment.  It is undisputed that no Baker Hughes employee ever touched plaintiff in a sexual or harassing way.  There are no allegations that any employee ever made an overt sexual comment to her, ever explicitly or implicitly request that she engage in a sexual act, or threatened her physically in any way.  The language about which Thibodeaux complains consists of isolated comments made during the course of her year at Baker Hughes, and most of these comments were innocuous.  While Leco's behavior may have been boorish and offensive, it does not constitute severe and pervasive actionable harassment.  Accordingly, Thibodeaux's claim of sexual harassment under Title VII is dismissed.

ii.     **State law claim.**

Thibodeaux's Complaint also asserts discrimination claims under Louisiana state law. Louisiana courts "have looked to federal jurisprudence to interpret Louisiana discrimination laws." *King v. Phelps Dunbar*, 743 So. 2d 181, 187 (La. 1999). Accordingly, Thibodeaux's state discrimination claims are dismissed.

b.     **Thibodeaux's claim of retaliation under Title VII.**

In order to establish that Baker Hughes retaliated against her in violation of Title VII, Thibodeaux must demonstrate that (1) she engaged in "protected activity," (2) she suffered an "adverse employment action," and (3) there was a "causal nexus" between the protected activity and the adverse action. *Green*, 284 F.3d at 657. To survive summary judgment, Thibodeaux must make a *prima facie* showing of these elements. *Ackel v. National Communications, Inc*., 339 F.3d 376, 385 (5th Cir. 2003).

At the *prima facie* stage, "the standard for satisfying the causation element is 'much less stringent' than a 'but for' causation standard." *Id.* at 385. Nevertheless, "the plaintiff must produce *some* evidence of a causal link between the protected activity and the adverse employment action to establish a *prima facie* case of retaliation." *Id.*

Thibodeaux reported Leco's alleged harassment to Christine Montet on January 28, 2004, and reported most of the other incidents of alleged harassment on February 25, 2004. The Fifth Circuit has held that "the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case." *Roberson v. Alltel Information Serv.*,  373 F.3d 647, 655 (5th Cir. 2004) (italics in original). Thibodeaux offers no evidence to support her claim that her termination in July 2004 was causally linked to her reports

of harassment.  Additionally, the court finds that the evidence in the record amply supports

Baker Hughes' stated reason for terminating Thibodeaux:  her failure to be present at work for

over two months after her disability benefits ended on April 30, 2004.

<strong>c. Intentional infliction of emotional distress.</strong>

Under Louisiana law, to establish a claim for intentional infliction of emotional distress,

a plaintiff must demonstrate:

> (1) [T]hat the conduct of the defendant was extreme and outrageous; (2) that the
> emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired
> to inflict severe emotional distress or knew that severe emotional distress would be
> certain or substantially certain to result from his conduct.

*Almerico v. Dale*, 2006 WL 846834 (La. App. 5th Cir. March 28, 2006).  The Supreme Court of

Louisiana has recognized that the conduct in question must be extreme and intolerable:

> The conduct must be so outrageous in character, and so extreme in degree, as to go
> beyond all possible bounds of decency, and to be regarded as atrocious and utterly
> intolerable in a civilized community.  Liability does not extend to mere insults,
> indignities, threats, annoyances, petty oppressions, or other trivialities.  Persons must
> necessarily be expected to be hardened to a certain amount of rough language, and to
> occasional acts that are definitely inconsiderate and unkind.

*White v. Monsanto*, 585 So. 2d 1205, 1208 (La. 1991).  Additionally:

> Louisiana's jurisprudence has limited the cause of action for intentional infliction of
> emotional distress in a workplace setting to cases which involve a pattern of
> deliberate, repeated harassment over a period of time.  The distress suffered by the
> employee must be more than a reasonable person could be expected to endure.
> Moreover, the employer's conduct must be intended or calculated to cause severe
> emotional distress, not just some lesser degree of fright, humiliation, embarrassment, or
> worry.

*Almerico*, 2006 WL 846834.

The record contains no evidence that Baker Hughes' employees' conduct was atrocious

and utterly intolerable in a civilized community.  Viewing the evidence in the light most

9

favorable to Thibodeaux, Baker Hughes' employees used vulgar language, some of them may have telephoned Thibodeaux at her residence, and one employee who Thibodeaux admits she befriended, Vinnie Leco, acted in a boorish manner, showing up unannounced while Thibodeaux was dining, driving past her residence, and telephoning her on several occasions.  While this behavior may have caused Thibodeaux some minor degree of fright, humiliation, embarrassment, or worry, this behavior was not "utterly intolerable in a civilized community."  Additionally, there is no evidence that any of Baker Hughes' employees intended or calculated their behavior to cause Thibodeaux severe emotional distress.[12]  Accordingly, Baker Hughes' motion for summary judgment on Thibodeaux's intentional infliction of emotional distress claim is granted.

### 2.    Continental's Motion for Summary Judgment (Document 26).

Thibodeaux's Complaint alleges that Continental improperly terminated her short term disability benefits on April 30, 2004, and seeks damages against Continental under Louisiana law, including LSA-R.S. 22:658 and 1220.[13]

The Baker Hughes disability plan which provided Thibodeaux with benefits is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1001 *et seq.*[14] Under § 1144(a) of ERISA, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to

---

[12]    Plaintiffs' summary judgment opposition stated that she would supplement the record with the deposition transcripts of Dr. Redden and Dr. Magnum.  Document 36 at p. 23. Plaintiff did not file either deposition into the record, and her counsel has informed the court that he does not intend to offer the transcripts.

[13]    *See* Complaint at ¶¶ XXX. to XCIV.

[14]    ERISA governs "employee benefit plan[s]," which includes plans maintained by employers that provide benefits "in the event of . . . disability."  29 U.S.C. § 1002(1).

make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004).  Accordingly, the claims asserted by Thibodeaux against Continental under Louisiana law are dismissed.[15]

ERISA authorizes Thibodeaux to sue to recover benefits due under a plan, to enforce rights under the terms of a plan, or to clarify rights to future benefits under a plan.  29 U.S.C. § 1132(a)(1)(B).  The court reviews Continental's decision to terminate benefits under an abuse-of-discretion standard because the Baker Hughes Plan gives Continental the discretionary authority to determine eligibility for benefits and to construe the plan's terms.  *Wildbur v. Arco Chem. Co.*, 974 F.2d 631, 636 (5th Cir. 1992).[16]  Under the abuse-of-discretion standard, the court must determine whether Continental acted "arbitrarily or capriciously," and a determination is deemed arbitrary if it was made "without a rational connection between the known facts and the decision or between the found facts and the evidence."  *Lain v. Unum Life Ins.*, 279 F.3d 337, 342 (5th Cir. 2002).

The record reflects that Dr. Carl Magnum, a licensed social worker, provided a note to Continental on March 5, 2004 indicating that Thibodeaux was "experiencing clinically

---

[15]     Numerous courts have dismissed claims against ERISA plans based on LSA-R.S. 22:658 and/or LSA-R.S. 22:1220, the two statutes upon which plaintiff relies, due to ERISA preemption.  *See, e.g.*, *Cunningham v. Petroleum Prof'l Int.*, 2006 WL 1044153, at *6 (E.D. La. April 19, 2006); *Dickens v. Prudential Ins. Co.*, 2006 WL 845601, at *6 (W.D. La. March 28, 2006); *Anderson v. Business Men's Assurance Co.*, 2003 WL 21305335, at *9-*10 (E.D. La. June 5, 2003).

[16]     The introduction to the Baker Hughes Disability Plan states that Baker Hughes, the Plan Sponsor, "has entered into a Claim Administration Service Agreement with Continental Casualty Company to provide certain services with the respect to the Plan."  Section 4) a) of the "Disability Plan Claim Administration Service Agreement" between Baker Hughes and Continental provides that Baker Hughes "has delegated to [Continental] sole discretionary authority to act and serve as the claim fiduciary for the Plan and determine eligibility for benefits and interpret the provisions of the Plan."

11

significant distress and impairment in social and occupational functioning," and if she attempted to return to work "the stress would likely precipitate a loss of social/emotional control."  Dr. Magnum provided additional therapy notes on March 25, 2004.

Although Continental extended disability benefits to Thibodeaux through April 30, 2004, Continental informed Thibodeaux on May 5, 2004, May 27, 2004, and June 30, 2004 that additional information was needed from a medical doctor to assess her disability status.[17] Continental's June 30, 2004 letter was specific, acknowledging receipt of a note from Thibodeaux's attending physician and requesting that Thibodeaux provide the supporting medical records and documentation to this note.[18]  After Thibodeaux retained counsel, Continental again requested medical documentation from Thibodeaux's treating physician on August 10, 2004.  Thibodeaux never provided the information from her physician that Continental repeatedly requested.  The court finds that Continental's decision to terminate benefits was neither arbitrary nor capricious, and was rationally based on Thibodeaux's failure to provide supporting documentation from her treating physician.  Accordingly, Continental's motion for summary judgment is granted.

---

[17]     In addition to these letters, Continental's claim file reflects that on May 19, 2004, its nurse told Thibodeaux that she needed "to be certified for disability from a medical doctor – not a therapist or licensed social worker."  On May 27, 2004, a Continental representative again told Thibodeaux over the telephone that it needed "medical documentation such as medical records or office visit notes to support ongoing disability."

[18]     Dr. Philip M. Neal, Thibodeaux's treating physician, provided only a brief note to Continental indicating that he had prescribed Lexapro and Xanax, and recommended that Thibodeaux seek counseling with Dr. Magnum.

C.      **Conclusions.**

Defendants' Motions for Summary Judgment are hereby granted.

New Orleans, Louisiana this ___25th___ day of May, 2006.


_____
           **Mary Ann Vial Lemmon**
        **United States District Judge**

13